Good morning, your honors. Jordan Bach from Goodman Proctor, representing the petitioner Mr. Carranza-Flores. I'll aim to reserve three minutes for rebuttal, and I'll watch the clock. Mr. Carranza-Flores experienced a textbook case of political persecution. He was violently them precisely because he was a member of the rival political party running to unseat them in the upcoming elections. Under this court's case law and common sense, that is plainly persecution on account of political opinion. What do you do with the Santa case, S-A-N-T-A, which by my read holds that if you volunteer your political affiliation to persecutors, school's out? I don't think that's correct, your honor, and I don't think that can be squared with the sweep of this court's case law. I think, you know, the way I'd interpret it is you need to view the statement in the sum total of the circumstances and then perceive how the attackers are responding to that statement. But I think, you know, I'd point to Borja this court's en banc opinion in Borja in particular is recognizing, you know, they're the applicant very clearly made a voluntary statement of her political opinion. She was targeted for economic extortion and she, with no prompting from the attackers, volunteered that she was in favor of the government and she was being attacked by the New People's Republic, which is an anti-government group. And there what happened is the court then looked at the totality of the circumstances and looked at the response from the attackers and said, you know, there was then an escalation in behavior, an escalation in violence from the attackers. They pulled out a gun. So the implication from that evidence is that they were responding to her political opinion. I think the court made the same statement in Parsimova, pointing out there that if you have a, the language was increase in severity after a discussion of the attacker's political motivation, then that likewise shows that the attackers are being motivated by political opinion. So I think, you know, I read the decision as saying you need to look at the totality of the circumstances and the response. It's not enough just that someone who's being attacked makes a statement in favor of their political opinion. But here we very much have evidence of a response from the attackers. So Mr. Kronzaflores shares his political opinion directly. He tells his attackers in the first February attack, I can't help, I won't help you support the FMLN party. I specifically belong to the rival party that's running against your party in the upcoming election. We then have two follow-on attacks of increasing severity. In the second attack, the FMLN attackers, this is one week before the election, pull Mr. Kronzaflores into their truck. They demand that he buy votes for them. Again, votes that are going to help their party and come out of his party's vote in the upcoming election. And when he refuses, they slash his fingers. He needs 20 stitches. And they give him three days to help with their vote And then we have the third attack, which takes place after the election. So at that point, you know, I think the immediate motivation to help the FMLN party is passed. And the FMLN attackers nevertheless track him to a different district in El Salvador and shoot at him with a gun. So I think, you know, given that sweep of circumstances, this is very different from a case where you merely have someone volunteer a political statement and you don't, excuse me, don't have the requisite reaction. I think the other point I'd make here, which goes to your question about Santa, is I think, you know, this case is really different from a lot of the recruitment cases because of the intertwined nature of the motivations here. Just to set out the context, the first two attacks happened in February and March of 2012. There was an election happening on March 11th of 2012 where the CN party, the party Mr. Cronza-Flores belongs to, is running to unseat the FMLN party, which at that point had the mayor. Mr. Cronza-Flores is highly visible with the CN party. This is on AR 130 and 140 and 141. He goes door to door to collect signatures. His entire family had been at meetings. He went to seven to eight meetings over a period of four to five months before the election, at which he is visibly helping out. So I think he is highly associated with the party. And then on top of that, we have a situation where, you know, the FMLN attackers are pursuing him. They want him to buy votes to help their party. But their party is running against his party in the upcoming election. That is happening one week after the second attack. I think this is very different from a lot of the standard recruitment cases where you don't have, you don't have sort of the flip side of the coin that the person they're attempting to recruit has this interest that is directly antagonistic to the attackers. You know, so to the extent that we have the extortion plus line of cases that came up in Alfaro Manzano, it comes up in Borja, it came up in, you know, a series of cases. This is in some sense recruitment plus. Yes, they were trying to recruit him. They wanted him to buy votes. But that was inextricably intertwined with their antagonism toward his party, which was running to unseat their own party in the election that was about to happen. So I think there's sort of, there's two ways to think about how to approach the nexus analysis in this case. The first is what I was just discussing, that really these two motivations are flip sides of the same coin. We're talking about the same thing. And you can't think about assisting the FMLN party and buying votes for the FMLN party without also thinking about the antipathy towards his party, the CN party, that's running to unseat him. But I think putting that aside, even if the court views them as two distinct motivations, you know, the error here is similar to the error that occurred in Alfaro Manzano. The fact that the FMLN attackers are motivated to help their own party is not the end of the analysis. This court has made clear in Alfaro Manzano, in Parasimova, in a series of cases, that the fact that an unprotected ground also formed a motivation is not the end of the analysis. You need to consider, assuming we have two distinct motivations, and even assuming that pushing Mr. Kranza-Flores to buy votes for the FMLN party is not a protected ground, that still you need to consider the evidence that they were, the attackers were coming after Mr. Kranza-Flores because of his political opinion specifically. And that goes back to the evidence I discussed at the beginning of Mr. Kranza-Flores' direct statement of his own political opinion, the extensive evidence of his involvement with the political party, and then the escalating series of events that we see happen in the February attack, the March attack, and then the late August, early September attack that occurred in a different district. So I think regardless of which way the court approaches it, I think here it is clear that there is sufficient evidence in the record to compel the conclusion that Mr. Kranza-Flores was persecuted on account of his political opinion, and that satisfies the nexus standard that formed the sole basis of the board's decision here. Yes. Thank you, Judge Hawkins. So after Mr. Kranza-Flores filed his initial opening brief in this case, this Court decided, Braha-Romero, in which the Court said that while asylum is governed by the one central reason standard, withholding of removal is still subject to the A reason standard. So the protected ground needs to be A reason for persecution. It doesn't need to be one central reason. And so the analysis in Barisimova and the line of, excuse me, the analysis in Borja and the cases that surrounded it, the analysis that has been abrogated with respect to asylum still very much applies with respect to withholding. You know, we think here there is ample evidence to show that his involvement with the CN party was one central reason for purposes of asylum. But I think at an absolute minimum, it shows that it was A reason sufficient for withholding of removal. And I think for that reason, the board's piggybacking analysis here doesn't work and can't stand. And I think, you know, again, I think we think the evidence is sufficient to show that he has satisfied asylum. But at a minimum, taking this record, it is very difficult for me to see how his involvement in the rival political party that is running against the FMLN party wasn't at least A reason, particularly given all the circumstantial evidence, you know, just on AR-127, 128 in particular, and 130, 132. I mean, he is being stopped leaving CN party events. The first, the February attack occurs when he's leaving a CN party event. The March 4th attack occurs when he's leaving the event that was the capstone of the election season for the CN party, sort of marked the end of campaigning. It's one week before the election. So I think taking those circumstances into account, it's clear that his involvement in the CN party was at least A reason, if not A central reason. I think given that, we'd urge the Court here to hold as a first option that Mr. Kronzaflores has satisfied the nexus standard for both asylum and withholding of removal. But at a minimum, I think this case needs to go back down to the board to apply the correct standard. If the Court has no further questions at this time, I'll reserve my time for rebuttal.  Very well. Thank you. Thank you.  Good morning. Ted Durant for the United States. May it please the Court. Petitioner failed to meet his burden of proof for either asylum or withholding of removal because he did not provide any evidence that the members of the FLMN were motivated by his political opinion at all. Now, he certainly showed that they were aware of his political opinion based on what he told them, but he did not connect the dots. Awareness does not equate to motivation. And on this record alone, he has not shown that the FMLN members were motivated at all by this opinion. And it's easily distinguishable from the Alfaro case that the Court asked the attorneys to consider. Now, Alfaro is a very different case. What you have here is someone who's tremendously devoted to Jehovah's Witnesses. He's given his life to it. Actually goes back to El Salvador so he can preach on the streets to everyone. And he'll talk to everyone gang members alike. Now, the gang members do not like these Jehovah Witnesses in particular because they take these kids who would otherwise be gang members and teaches them that religion is good and takes them away from what they want them to be as gangsters. Now, these gang members in Alfaro, as opposed to this case, first time they see the guy, they're insulting him. They're insulting his religion. They say, if you practice your faith, we're going to hurt you. We have nothing here. In this case here, we have the four party members of the FMLN. They approach Petitioner. They say, you're going to work for us. He ignores them. They don't like being ignored. They said, if you don't work for us, we're going to hurt you. He said, well, I can't, and I'm paraphrasing now. If I can't work for you, I'm with the CN party, which is a fledgling party that Petitioner collected signatures for when the... Does that matter? Yes, sir. The CN party was an offshoot of, I believe, the PCN party. Does it matter whether it's a fledgling party or one that's on the precipice of taking control of government? What I'm saying is I'm looking at the entire record, sir, as a whole, and there's no record evidence, particularly the country condition evidence of a rivalry that these FMLN members persecute CN members. Now, if there's a rivalry between the CN party and the FMLN party, and in Alfaro, you at least have some country condition evidence that shows, or expert witness that shows that these gang members really don't like these street preachers, especially Jehovah's Witnesses. And by the way, Jehovah's Witnesses are easily identifiable because they wear a suit and tie when they preach, as opposed to anybody else. There's nothing here indicating that when these... On this record alone, if there was a few changes here, I would agree with Petitioner, but it's his burden to prove it. And what we have is three incidents where even after he mentions that he can't help them because he's in the CN party, we don't have one insult, one nothing. They had the opportunity when they went after him the second time, and they said nothing about that. Petitioner was afraid because he ignored them. They were mad at him because he ignored them. He wasn't buying into their vote-buying scheme. His political opinion, based on this record, means nothing to these party members. And if you look at everything, the record as a whole, you don't have the gang members mentioning his religion, unlike a case like Borja, where the lady mentioned that she was opposed to the shiny path or was in a different party, and they showed visible anger to her political opinion. And that's not the case here. That's not the case here. We have an escalation of violence, but that doesn't show motive at all. Not at all. We also don't have anything in the record from his buddy, or his friend, Juan Anselmo. Apparently when Petitioner helped the CN party, he went with six or seven other folks. There's nothing in the record that shows that these people were persecuted. There's nothing that shows that these party members went after them. Nothing from Juan Anselmo that shows that these other five people were treated similarly. So it's a one-off. In addition, as I said before, no country-conditioned evidence that shows that this particular party goes after this particular party that that Petitioner was a member of. So it's his burden to show it, and the evidence must be compelling. And I submit to you that if there was a couple things here different, I would have asked the court to remand. If they had said during the attack, you know, why aren't you helping us? Oh, by the way, you're just some punk from the CN party. That's something. If Petitioner, when asked, why did they go after you, rather than saying, because I ignored them, because I gaffed them off because they were mad at me, if he said, well, I suspect that maybe it was because of my party, maybe because I was wearing a CN t-shirt, there's no evidence of that, maybe I had a CN hat, nothing like that. And so, you know, if, I mean, maybe reasonable minds can differ, but it has to be compelling. And I submit to you on this record, it is not, based on the country-conditioned evidence, based on Petitioner's testimony, based on what these members said to him, and lastly, there's no evidence at all that they tracked him anywhere. It could have been, you know, just a fortuity. They saw him in a public area. He hasn't said he's got any identifying party clothes on at all. And when he goes to that, the third incident, when he goes to the town that's no longer, I think, in San Mateo, there's no evidence that these guys tracked him. At most, you see guys with masks on their face, and they fire an errant round at him. Now, it could be anything, but I submit, based on common sense and experience, if somebody wants to track you, from A to B, they're going to see you before you see them, and it's going to be more than an errant round. So, the evidence doesn't show anything, any tracking, and even if they had tracked him, it doesn't show motivation at all. So, this case is easily distinguishable from Alfaro, and I'd like to draw the Court's attention. I just saw the case last night, because it was, I guess it was published November 5th. I was reading it this morning, and Judge Owen was the author of the case, and it's a very unfortunate case, Rosas-Roman. And I didn't 28J it, because I didn't have time, but here you have, it's a very unfortunate case where a woman is sexually assaulted by gang members, I believe in Mexico. And the issue is whether or not they're just thugs, or they hold anti-women opinion. Well, during the sexual assault, they said things like slurs against women, and in addition, they didn't rob her, they only sexually assaulted her. So, that is evidence that they cared about the fact that she's a woman, and we have nothing there, not even a slur from these guys. And if we'd had that, if we'd had something that this particular party has any interest in political opinion, I wouldn't be here right now. So, if... No, sir. No, sir. I do apologize for that. I wasn't, but I can give that right now, but it's just, it was an unpleasant... I sure will. And I didn't, I'm not trying to sandbag anybody. I just saw it this morning, and I saw that Judge Owens was the author of it, so I figured... I'm not sure I can claim full credit for it. But I am aware of the case, yes, very much so. I heard that one a couple weeks ago. If there's nothing else, this concludes my presentation, if the Court has no questions of me. Thank you very much. Thank you, Counsel. Thank you, Your Honors. I'm not familiar with that case, but I'm happy, I will, of course, review it, and then submit a letter to the Court. I think first, you know, the idea of this fledgling party, I think, as a legal matter, doesn't make any difference. I also think here, you know, these two parties are running against each other in a political election, but the CN party won that mayoral election happening in May 2012. The CN ousted the FMLN mayor. So I think the question of, you know, the primary rivalry between the FMLN and the ARENA party was not what was happening in this particular town. Second, you know, just going back to the gang cases and Senga, which Judge Hawkins brought up, I think what those stand for is violence plus disparity of views is not enough. If you have a group, whether it's a political group or a gang, engaging in indiscriminate violence, the fact that some of the people swept up in that have different views is not enough. But that is very different from what is happening here. Now, I can't stress this enough, that these attacks are happening weeks before a political election between these two parties. Mr. Kronzaflores is tracked coming out of CN party events, both the first and the second time. They are asking him to buy votes for the FMLN party, knowing after the first attack there's no question they're on, excuse me, there's no question they're aware of his political affiliation. They know he belongs to the party that's on the other side of the election, and they're asking him to buy votes. Those votes are coming out of his party. That's what's on the other side. So I think this is very different from the gang cases in that sense. And I think, you know, it's helpful if you read those cases to see how different they are, and I think it shows the flaw in the board's reasoning. These are the cases that are being cited by the board and by the government. You know, in Santos Lemus, this court said the applicant did not present evidence that he was politically or ideologically opposed to the gang. That's not true here. Mr. Kronzaflores specifically said, I can't help you, I belong to the other party. You know, in this court's decision in Ramos Lopez, the court said the applicant alleged no facts in support of a political opinion beyond his refusal to join the gang. Again, very different from what happened here. And then there's the board's decision in matter of SED where the board said there is no evidence in the record that the respondents were politically active or made any anti-gang political statements. You know, that's a decision the board is relying on here to show why it is it doesn't think Mr. Kronzaflores satisfied the nexus requirement. But that looks nothing like what is happening here. Mr. Kronzaflores was very politically active. His respondents were clearly aware of that, if not on the first attack, certainly the second and third attacks. So I think that really shows that the board did not engage in the correct legal analysis here. At a minimum, the analysis it should have gone through is the same analysis the court outlined in Alfaro-Manzano where it needed to show that the attacks themselves have been a sufficient reason for the attacks. And I think, you know, we do think the evidence here is so substantial that it compels the conclusion that the nexus standard was satisfied. But at a minimum, I think the case needs to go back down to the board for the board to apply, you know, the reasoning that this court outlined in Alfaro-Manzano. You know, also note that I think the question here about what it is, what type of evidence it is that needs to be seen, you know, the board and the government are expressly, you know, are in effect imposing a sort of an express statement requirement that you need some sort of statement from the attackers. And, you know, the government said this case would be different if they had referred to Mr. Kronzaflores's, you know, political opinion. This court has repeatedly held that you don't need a statement from the attackers and has said, you know, we can't expect attackers to sort of narrate their motives in real time. This court just said that in June in Al Rokabi. It said it in Parasumova. It's come up over and over again that you have to look at the totality of the circumstances. You know, in Borja, there was also not a statement from the attackers there that they were opposed to the applicant's political opinion. You see an escalation in their behavior. But I think as the government recognized, we also see an escalation in behavior here. We had the first attack where Mr. Kronzaflores is himself threatened, but there's no violence. There's no threat against his family. Then in the second attack, we see a huge jump in that he is pulled into their truck. He's sliced with a knife. He needs 20 stitches. And they escalate their attacks. They give him a three-day timeline to buy votes or the attackers will kill, they said, both him and his family. And then we have the third incident where, you know, the election has passed. They no longer have the motivation to buy votes for their own party. And still he's tracked to a different district he shot at. And I know the government is questioning now whether those are the same attackers, but the board accepted that it was the same people who were tracking him. So I don't think there's any factual question on the board's opinion whether that was of a piece and part of the same attacks. So I think just to close, I'd emphasize, I think this case is really unique. It is categorically different from the recruitment cases, given the context of the upcoming election that was happening, the two rival parties, the ample evidence of Mr. Carranza-Flores' involvement in the CN party. And for that reason, we'd urge the Court to hold that the nexus standard is satisfied or at a minimum to remand to the board to conduct the analysis. Thank you, Your Honors. Thank you both for your very fine briefing and argument in this case. It's much appreciated. This matter is submitted.
judges: HAWKINS, TASHIMA, OWENS